UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

LOVELT WALKER,                    :        Hon. Joseph H. Rodriguez

           Plaintiff,        :        Civil Action No. 10-4279

        v.                    :        **MEMORANDUM OPINION
                                  AND ORDER**

ASSET ACCEPTANCE, LLC,             :

          Defendant.        :

**<u>RODRIGUEZ</u>**, Senior District Judge

      This matter comes before the Court on Defendant Asset Acceptance, LLC's

("Asset") motion for summary judgment. Plaintiff Lovelt Walker ("Walker") filed this

Complaint alleging that Defendant left her an abusive voicemail message in violation of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, <u>et seq</u>. The Court has

considered the written submissions of the parties. For the reasons discussed below, the

motion will be granted in part and denied in part.

## I. Background

      The undisputed facts are as follows. Plaintiff alleges that she received a voicemail

from Defendant on July 22, 2010 at 1:42 p.m. in which Defendant's agent called her a

"fat motherfucker." (Compl. ¶ 8.) Prior to July 22, 2010, Defendant had acquired a

defaulted account from World Financial Network which was owed by Plaintiff (the

"WFN account"). (Decl. of Kenneth Proctor ("Proctor Decl.") ¶ 4.) Defendant initially

contacted Plaintiff regarding this debt in a letter on February 10, 2009 which contained

disclosures consistent with the FDCPA. (Proctor Decl. ¶ 6.) Defendant assigned the

WFN account to its account representative Kerwin Bonner ("Bonner").

On July 22, 2010, Bonner called Plaintiff and left a voicemail regarding the WFN account. Plaintiff alleges that when she checked her voicemail, she heard a message that included the statement "you fat mother[fucker]." (Compl. ¶ 8; Pl.'s Br. Ex "A" (audio CD).) Plaintiff states that the voicemail system identified the originating phone number as 434-878-9954. (Compl. ¶ 8; Pl.'s Br. Ex. "A.") Defendant contends that while Bonner did leave Plaintiff a voicemail, he did not use any profane or abusive language. Rather, Defendant asserts that Bonner's message (referred to as a "Foti message") contained merely the following:

> This message is for Lovelt Walker. If you're not her, please hang up. If you are, please continue to listen, but not in the presence of others, because it contains personal information. This is Kerwin Bonner, debt collector with Asset Acceptance, please contact me at 1-800-525-8022, extension is 3682. Please return my call today, the reference number is 38967399. 38967399.[1]

(Decl. of Thomas R. Dominczyk ("Dominczyk Decl.") Ex. "B" (audio CD).) Bonner called Plaintiff again the following day and spoke with her directly about the account. Plaintiff stated that Bonner neither said nor did anything inappropriate in that conversation or in other conversations she'd had with him, or in the Foti message as heard above. (Dep. of Lovelt Walker ("Walker Dep.") 206:12 - 209:20.)

On July 26, 2010, after hearing the profane message, Plaintiff called the number indicated on the voicemail and reached Defendant. Plaintiff spoke to a number of Defendant's representatives and supervisors, some of whom stated that, upon listening to Defendant's recording of the voicemail left by Bonner, no profanity was present. Ultimately Plaintiff spoke to someone named "Richard," who identified himself as the

---

[1] 38967399 was the account number Defendant assigned to the WFN account.

supervisor for all of the other individuals with whom Plaintiff had spoken and informed Plaintiff that it would not be possible for him to play Defendant's recording of the call over the phone. (Compl. ¶ 22.) Plaintiff alleges that Richard "became more and more confrontational" and "increasingly more difficult." (Id. at ¶¶ 23, 25.)

Plaintiff filed the Complaint in this matter on August 20, 2010, alleging claims under the FDCPA, 15 U.S.C. §§ 1692d, 1692d(2), 1692e, 1692e(10) and 1692f ("Count I"), as well as a claim for Intentional Infliction of Emotional Distress ("Count II"). Defendant moves for summary judgment on all claims. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## II. Discussion

### A. Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a).  The Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law, and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477

3

U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Andersen, 477 U.S. at 256-57.  "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.  That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact."  Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

## B.  Analysis

### 1. Fair Debt Collection Practices Act

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692e. The FDCPA prohibits, generally, the use of harassing oppressive, and abusive techniques in connection with the collection of debts, 15 U.S.C. § 1692d; the use of false, deceptive, or misleading representations in connection with the collection of debts, 15 U.S.C. § 1692e; and the use of unfair or unconscionable means in connection with the collection of debts, 15 U.S.C. § 1692f.  Section 1692k provides a private right of action to any person with respect to whom a debt collector has violated the statute.  15 U.S.C. § 1692k(a).

Defendant argues that Plaintiff has no admissible evidence that Defendant left the offensive voicemail. Specifically, Defendant argues that (1) both the voicemail itself and Plaintiff's testimony regarding the message are inadmissible hearsay, and (2) Plaintiff's copy of the voicemail is not admissible because it does not satisfy the best evidence rule and it cannot be authenticated. Accordingly, Defendant argues that

Plaintiff cannot meet her burden of proof that Asset violated the FDCPA.

a. The Voicemail Message and Plaintiff's Testimony Are Not Hearsay

"Hearsay" means a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Defendant argues that the profane voicemail message and Plaintiff's testimony about it are hearsay. Defendant further argues that the voicemail system's statements of the date and time the message were received are also hearsay. Neither argument is persuasive because neither the statements nor Plaintiff's testimony as to them are hearsay.

Not every extrajudicial statement constitutes hearsay. U.S. v. Saada, 212 F.3d 210, 218, n. 8 (3d Cir. 2000). As noted in the definition, the hearsay rule applies to statements offered to prove the truth of the matter *asserted in the statement*. Here, Plaintiff does not offer the profane remark or testimony about it in order to prove its truth; rather, the import of the statement is its having been made, as such a statement could violate the FDCPA. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay." Id.; Fed. R. Evid. 801(c), advisory committee note. Thus, by definition, the voicemail message is not hearsay.[2]

---

[2] Defendant attempts to argue that statements by unknown individuals constitute hearsay and relies on Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir. 1996) for the proposition that the voicemail must be excluded as hearsay because Plaintiff cannot identify the speaker of the message. Defendant's argument distorts the court's consideration of the hearsay statement in that case. In Philbin, a case brought under the Fair Credit Reporting Act, the plaintiff contended that an unidentified official at a company which denied him credit told him that his credit application was denied because of a default reflected in his credit report. Id. at 961, n. 1. The court observed that

The automated time-and-date stamp attached to the voicemail is also not hearsay. The voicemail system is not a declarant and the data it collected and relayed were not statements. U.S. v. Khorozian, 333 F.3d 498, 506 (3d Cir. 2003) (header on a fax was not hearsay because "a statement is something uttered by 'a person,' so nothing 'said' by a machine . . . is hearsay") (citation omitted); See also, U.S. v. Washington, 498 F.3d 225, 231 (4th Cir. 2007) (only a person may be a declarant and make a statement). As such, the voicemail system's time-and-date identifier is not hearsay. Accordingly, the Court concludes that the voicemail message and Plaintiff's testimony as to what she heard therein are not excluded as hearsay.[3]

b. Plaintiff's Testimony Concerning the Voicemail Message is Not Excluded Under Fed. R. Evid. 1002.

The determination that the message and Plaintiff's testimony regarding it are not hearsay does not end the inquiry into their admissibility. Because Plaintiff relies on the contents of the voicemail message as the basis of Defendant's alleged violation of the

---

the plaintiff could not identify the individual and did not include such person as a witness in the Joint Pre-Trial Order. Id. The court then went on to find that "the hearsay statement by this unknown individual is not 'capable of being admissible at trial.'" Id. The court did not, as Defendant argues, find that the statement was hearsay *because* the official was unidentified. Moreover, the difference between Philbin and the situation presented here further illustrates the difference between a statement which is hearsay and one which is not. Liability in Philbin relied in part on the truth of the statement made by the unknown official to support an FCRA claim premised on harms caused by information the credit reporting agency reported about the plaintiff. Thus, the statement was offered to prove the truth of the matter asserted in the statement, which is not the case here.

[3] Because the Court finds the voicemail message is not hearsay for the reasons stated, Plaintiff's arguments that the statement constitutes a party admission need not be addressed.

FDCPA, Plaintiff's evidence may be subject to the admissibility standards of Article X of the Federal Rules of Evidence. The Court must therefore determine whether Plaintiff's evidence–the message and her testimony–are subject to and excluded by the best evidence rule.

Derived from the common law "best evidence rule," Rule 1002 limits the forms of evidence that are admissible to prove the content of writings, recordings and photographs. "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. The Rules make provision, however, for the admission of other forms of evidence in certain circumstances. Under Rule 1003, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. In addition, "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if . . . (a) all the originals are lost or destroyed, and not by the proponent acting in bad faith." Fed. R. Evid. 1004.

As an initial matter, the Court finds that Article X is applicable in this case because in order to sustain her claim, Plaintiff must establish that the content of the voicemail message violated the FDCPA. Plaintiff's knowledge of the profane statement arises solely from the recorded message. In addition, Plaintiff does not have independent first hand knowledge of the date and time the message was left or of the originating phone number, which are alleged to link the message to Defendant, outside of the content of the message itself. Thus, Plaintiff must prove the content of the recording to satisfy her burden of proof and Rule 1002 applies. The Court must

8

therefore determine whether any or all of Plaintiff's evidence regarding the message is excluded under the Rules.

Plaintiff does not possess an original version of the message as recorded by her cell phone provider. That original, which was not physically stored on Plaintiff's phone but on her cell phone provider's server, no longer exists. Plaintiff asserts that she had originally been told that the message would be retrievable for six months, until January 22, 2011. (Walker Dep. 27:3-7.) According to Plaintiff, the message was actually deleted from the provider's server after fourteen days, which Plaintiff did not learn until Plaintiff's Counsel subpoenaed the message in January of 2011 and the provider notified Counsel that the message was no longer available. (Decl. of Lovelt Walker ("Walker Decl.") ¶ 9.; Decl. of Brent F. Vullings ("Vullings Decl.") ¶ 3.)[4] Plaintiff states that prior to its deletion, she accessed the original version through her phone and one of her sons recorded it onto his own phone, transferred it to a computer and sent it to her attorney. (Walker Dep. 20:6-25 - 21:1-9.) It is this version which Plaintiff offers as evidence.

Loss or destruction of the original, unless due to bad faith of the proponent, is a satisfactory explanation of nonproduction. Fed. R. Evid. 1004(1), advisory committee note. On January 13, 2011, Plaintiff was deposed and testified that she understood the original message to be retrievable until January 22, 2011. Plaintiff's Counsel served a subpoena upon Plaintiff's cell phone provider on January 18, 2011, and in response the provider informed Counsel that the message would not have been retrievable after fourteen days. Though Counsel waited until the eleventh hour to subpoena the original,

---

[4] The message would have been deleted no later than August 6, 2010. (Vullings Decl. ¶ 4.)

there is no evidence of, and Defendant does not allege, that Plaintiff lost or destroyed the original in bad faith and the Court is satisfied that this was not the case.[5] This is enough to satisfy 1004 and allow for the introduction of secondary evidence of the voicemail message.

As discussed above, Plaintiff's testimony as to the content of the voicemail message is not hearsay. As the Court also finds that Plaintiff is entitled to present secondary evidence of the message under Rule 1004, Plaintiff may testify as to the message as she heard it. As such, Plaintiff possesses admissible evidence which creates a genuine issue of material fact as to whether Defendant left an abusive voicemail in violation of the FDCPA. Accordingly, Defendant's motion for summary judgment as to the FDCPA claim will be denied.[6]

---

[5] Defendant argues that it sent Plaintiff's attorneys a letter on November 3, 2010 seeking to preserve the original message along with a proposed preservation order, which was filed on January 14, 2011. (Dominczyk Decl. Ex. "I," "J," "K.") Defendant argues that despite the request to preserve evidence, Plaintiff allowed the original message to be destroyed. If, however, the original message was already destroyed in August of 2010, Defendant's request in November 2010 for the preservation order was, unknown to either party, futile and the fact that Plaintiff waited until the last minute to attempt to acquire the message in January of 2011 did not affect the destruction of the original recording.

[6] Defendant challenges admission of Plaintiff's copied version of the message, arguing that it is not a suitable duplicate under Rules 1001 and 1003. Because Plaintiff's testimony regarding the message is admissible and enough on its own to raise a genuine issue for trial, the Court need not determine the admissibility of the copied message at this time in order to resolve Defendant's motion for summary judgment. As to that question, the Court feels that determining the propriety of admitting the copy of the recording requires a Rule 104 hearing prior to trial. Because the Court does not reach the issue, denial of Defendant's motion for summary judgment on the FDCPA claim does not preclude Defendant from maintaining its challenge.

**2. Intentional Infliction of Emotional Distress**

Under New Jersey law, to prove a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is so severe that no reasonable person could be expected to endure it. Buckley v. Trenton Saving Fund Soc., 544 A.2d 857, 863, 111 N.J. 355  (N.J. 1988). The defendant must intend both to do the act and to cause emotional distress, or act recklessly in deliberate disregard of a high probability that emotional distress will occur. Id. To constitute extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. (citation omitted).  Thus, "[m]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities are insufficient." Flizack v. Good News Home For Women, Inc., 787 A.2d 228, 234, 346 N.J. Super. 150 (N.J. Super. App. Div. 2001).

In her Opposition, Plaintiff fails to point to evidence in the record supporting an IIED claim. Plaintiff quotes a portion of her deposition testimony that describes the events surrounding her listening to the message, but does not include the actual deposition transcript of the quoted portion or any other evidence from which a jury could find for Plaintiff on this claim. While the voicemail message was insulting and profane, Plaintiff has not shown that Defendant's conduct was extreme and outrageous. Plaintiff also fails to offer any evidence as to her alleged emotional distress, severe or otherwise. Accordingly, Defendant's motion for summary judgment as to Plaintiff's IIED claim will be granted.

## III. Conclusion

The Court having considered the written submissions of the parties, and for the reasons discussed above,

IT IS on this 10th day of July 2012 hereby ORDERED that Defendant's motion for summary judgment is DENIED as to Plaintiff's FDCPA claims, and GRANTED as to Plaintiff's Intentional Infliction of Emotional Distress claim.

_____/s/Joseph H. Rodriguez_____
Joseph H. Rodriguez,
United States District Judge
